1  J. Noah Hagey, Esq. (SBN: 262331)
       hagey@braunhagey.com
2  Matthew Borden, Esq. (SBN: 214323)
       borden@braunhagey.com
3  Eva Schueller, Esq. (SBN: 237886)
       schueller@braunhagey.com
4  BRAUNHAGEY & BORDEN LLP
   220 Sansome Street, Second Floor
5  San Francisco, CA 94104
   Telephone: (415) 599-0210
6  Facsimile: (415) 276-1808

7  COUNSEL FOR APPLICANTS SAM RAINSY
   and ICC FILING VICTIMS
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11         **CV 16   80258 MISC.** DMR

12

13  *In re* Ex Parte Application of                Case No.

14  SAM RAINSY and FILING VICTIMS before
    the International Criminal Court,

15         Applicants,                             ***EX PARTE* APPLICATION FOR AN
                                                   ORDER PURSUANT TO 28 U.S.C. § 1782
16  For an Order Pursuant to 28 U.S.C. § 1782      GRANTING LEAVE TO OBTAIN
    Granting Leave to Obtain Discovery from        DISCOVERY FOR USE IN FOREIGN
17                                                 PROCEEDINGS; SUPPORTING
    CHEVRON CORPORATION,                           MEMORANDUM OF POINTS AND
18                                                 AUTHORITIES**
    For use in Foreign Proceedings.
19

20

21

22

23

24

25

26

27

28

                                    i

*EX PARTE* APPLICATION FOR DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1       This is an Application for an order pursuant to 28 U.S.C. § 1782 granting leave to serve

2 Chevron Corporation ("Chevron") with a subpoena seeking targeted discovery in support of foreign

3 legal proceedings relating to the assassination of Dr. Kem Ley, a well-known Cambodian political

4 commentator and government critic.  *See* supporting Declaration of Eva K. Schueller, Esq.

5 ("Schueller Decl."), Exhibit A (subpoena).

6       Applicants are (1) Sam Rainsy, a defendant in a defamation suit in Cambodia, and (2)

7 Cambodian citizens represented by Richard Rogers, Esq., who have filed a Communication under

8 Article 15 of the Rome Statute of the International Criminal Court ("Filing Victims"), alleging

9 crimes against humanity committed by Cambodian government officials.  The foreign proceedings

10 are respectively, a criminal complaint alleging defamation against applicant Sam Rainsy, and a

11 proceeding before the International Criminal Court.

12       Applicants request the following categories of documents and things in the possession,

13 custody or control of Chevron and/or its representatives, agents or affiliates:

14       1.     All audio or video recordings taken during the period of July 1-14, 2016

15 (collectively, the "Surveillance Videos") in, around and/or at the Caltex gas station and onsite Start

16 Mart café therein located at the intersection of Monivong and Mao Tse Toung boulevards in

17 Phnom Penh, Cambodia (the "Caltex Station").

18       2.     All documents and communications related to the Surveillance Videos, including

19 without limitation, their preservation, dissemination, editing and/or destruction.

20       3.     Documents sufficient to identify the names of managers and employees of the

21 Caltex Station during the period of July 1-14.

22       4.     Documents sufficient to identify managers or employees of the Caltex Station who

23 were terminated or resigned between July 10 and July 31.

24       5.     All communications with any agent, employee or instrumentality of the Cambodian

25 government regarding Dr. Kem Ley or his death.

26       6.     All documents and communications related to the shooting of Dr. Kem Ley.

27       This Application is supported by the accompanying Memorandum of Points and

28 Authorities, the Declaration of Eva K. Schueller, the Declaration of Sam Rainsy, and the

1    Declaration of Richard Rogers filed concurrently herewith.  The subpoena and proposed order are

2    attached to this Application as **Exhibits A and B**, respectively.

3

4    Dated:  December 13, 2016                      BRAUNHAGEY & BORDEN LLP

5

6                                      */s/* Eva Schueller
                                     Eva Schueller, Esq.

7                                    Attorneys for Applicants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR DISCOVERY FOR USE IN FOREIGN PROCEEDINGS



J. Noah Hagey, Esq. (SBN: 262331)
   hagey@braunhagey.com
Matthew Borden, Esq. (SBN: 214323)
   borden@braunhagey.com
Eva Schueller, Esq. (SBN: 237886)
   schueller@braunhagey.com
BRAUNHAGEY & BORDEN LLP
220 Sansome Street, Second Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

COUNSEL FOR APPLICANTS SAM RAINSY
and ICC FILING VICTIMS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *In re* Ex Parte Application of SAM RAINSY and FILING VICTIMS BEFORE THE INTERNATIONAL CRIMINAL COURT,<br><br>    Applicants,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for use in Foreign Proceedings from:<br><br>    CHEVRON CORPORATION. | Case No.<br><br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF § 1782 APPLICATION** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 4

FACTUAL BACKGROUND ............................................................................. 7

    A.    The Investigation and Prosecution of Dr. Ley's Killer ............................ 7

    B.    The Politically Motivated Lawsuits Against Sam Rainsy ...................... 8

    C.    Allegations of Political Persecution Pending Before the International Criminal Court .............................................................................. 9

ARGUMENT ..................................................................................................... 11

I.    THIS APPLICATION EASILY MEETS THE STATUTORY REQUIREMENTS FOR SEEKING DISCOVERY FROM CHEVRON ........................ 11

    A.    Chevron resides in the Northern District of California ......................... 11

    B.    Applicants Are All "Interested Persons" under § 1782 ......................... 12

    C.    The Digital Recordings Are Sought for Use in Cambodian Domestic Courts and before the International Criminal Court ............................... 14

II.    THE SUPREME COURT'S *INTEL* FACTORS STRONGLY FAVOR GRANTING THIS APPLICATION ............................................................... 14

    A.    Chevron Is Not a Party to the Foreign Proceedings ............................. 15

    B.    Applicants Seek Highly Relevant Information That Will Assist the Foreign Courts ................................................................................ 15

    C.    No Foreign Discovery Restrictions Bar the Applicants' Requested Discovery ........................................................................................ 15

    D.    The Requested Discovery Is Narrowly Tailored to Avoid Undue Burden .............................................................................................. 16

    E.    Granting Applicants' Section 1782 Request Would Promote Efficient Discovery ........................................................................................ 16

CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**CASES**

*In re Gemeinschaftspraxis Dr. Med Schottdorf,*
    2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ............................................................ 12

*In re Chevron Corp.,*
    2012 WL 3636925 (S.D. Fla. June 12, 2012) ............................................................. 12

*In re Imanagement Servs.,Ltd.,*
    2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ........................................................... 16

*In re Republic of Ecuador,*
    2010 WL 4027740 (E.D. Cal. Oct. 14, 2010) ........................................................... 14

*In re Veiga,*
    746 F. Supp. 2d 8 (D.D.C. 2010) ............................................................................ 14

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241 (2004) ................................................................................... passim

*Oxus Gold PLC,*
    2006 WL 2927615 (D.N.J. Oct. 11, 2006) ............................................................... 12

**STATUTES**

28 U.S.C. § 1782 ......................................................................................... passim

28 U.S.C. § 1782(a) ................................................................................... 6, 11, 13

Cambodian Code of Civil Procedure §§ 148-160 ................................................... 15

Cambodian Code of Criminal Procedure, Art. 133 ................................................. 15

Cambodian Penal Code, Art. 305
    THE PHNOM PENH POST (Dec. 3, 2003) ................................................................ 13

**OTHER AUTHORITIES**

*Cambodian Law on the Management of Weapons, Explosives and Ammunition,*
    Art. 4 (2005) ..................................................................................................... 8

*Constitution of the Kingdom of Cambodia,*
    Arts. 31, 41 (Sept. 21, 1993) ................................................................................ 13

*Ten Lessons from the Chevron Litigation: The Defense Perspective,*
    1 Stan. J. Complex Litig. 219 (2013) .................................................................... 7

*U.N. Human Rights Committee, General Comment 34*
    CCPR/C/GC/34 (Sept. 12, 2011) ......................................................................... 13

1    Applicants Sam Rainsy and Filing Victims Before the International Criminal Court
2  represented by Richard Rogers (together, "Applicants") respectfully submit this Memorandum of
3  Points and Authorities in support of their application for an Order pursuant to 28 U.S.C. § 1782
4  granting leave to serve a local corporation, Chevron Corporation ("Chevron") with a subpoena
5  seeking discovery, or, in the alternative, for an Order to Show Cause as to why such subpoena
6  should not be granted.

7                                    **INTRODUCTION**

8    Applicants bring this proceeding to compel production of documents and things for use in
9  foreign legal proceedings relating to the assassination of Dr. Kem Ley, a well-known Cambodian
10 political commentator and government critic.  Dr. Ley's assassination occurred on the premises of a
11 wholly Chevron-owned "Caltex" gas station in central Phnom Penh, Cambodia.  In pending foreign
12 legal proceedings, Applicants assert that Cambodian government officials were implicated in, aided
13 and abetted or otherwise ordered the killing as part of an effort to suppress dissent and government
14 criticism.  Chevron and/or its local Caltex agents admit that on-site closed circuit cameras and/or
15 other video equipment recorded events on the night of Dr. Ley's murder.  Chevron has refused to
16 produce such video recordings and similar evidence relevant and necessary to Applicants' legal
17 cases related to the Cambodian government's alleged involvement in Dr. Ley's murder.  At the
18 same time, Chevron provided a copy of the recording to the Cambodian government.

19    The Assassination.  Dr. Kem Ley was one of Cambodia's most prominent and well-
20 respected political analysts and a passionate advocate for human rights, democracy and social
21 justice in Cambodia.  On July 10, 2016, shortly before 9:00 am, he was shot and killed in a Caltex
22 gas station cafe in central Phnom Penh where he routinely got his breakfast.  According to Chevron
23 Corporation's website, Chevron owns and runs the Caltex branded gas stations and Star Mart cafés
24 in Cambodia.  Chevron Corporation is headquartered in San Ramon, California.

25    The gas station at issue is equipped with multiple video cameras, which capture the outdoor
26 gas station as well as the inside of the Star Mart café.  The cameras were recording on the day of
27 the shooting, and captured the actual murder.  Local human rights organizations, political activists,

28

1   and reporters immediately requested copies of the footage from Caltex, as did Dr. Ley's family's

2   lawyers. Chevron has refused or ignored those requests to date.

3        The shooting occurred just days after Dr. Ley spoke at length on a popular radio broadcast

4   about a recent globally acclaimed report by Global Witness, describing the Cambodian ruling

5   family's vast wealth and secretive corporate holdings. At the time of his death, Dr. Ley was also

6   part-way through his "100 Nights" campaign, spending 100 nights with rural Khmer families to

7   investigate the roots of Cambodia's most pressing social issues. Dr. Ley's rising popularity and his

8   high-profile, critical analysis of the government apparatus put him squarely in the ruling party's

9   cross hairs. Just before his death, he commented that he feared for his life.

10        The victim, Dr. Ley, leaves behind his wife and five young children, the youngest of whom

11   was born October 3, 2016 and is named after his father. Dr. Ley's widow, Bou Rachana, also fears

12   for her life, and has fled Cambodia with their children since her husband's death. Ms. Bou has

13   pressed the government for an independent investigation to discover the truth about her husband's

14   killing, and has faced additional threats due to those public requests. Following her public

15   demands for transparency, Ms. Bou was also summoned to the court for questioning.

16        <u>Response to the Killing</u>. Following Dr. Ley's murder, Cambodian non-governmental

17   organizations, human rights activists and opposition political party members condemned the

18   killing. Several immediately blamed complicity or more by government officials – calling it an

19   extrajudicial assassination intended to silence one of the ruling elite's most popular critics. The

20   shooting received broad attention in Cambodia and internationally. In the immediate aftermath of

21   the killing, hundreds of supporters and human rights activists gathered at Chevron's gas station to

22   protest the killing and prevent officials from quickly removing the body and preventing adequate

23   forensics. The next several months have seen multiple subsequent protests, and hundreds of

24   thousands marched in protest and mourning for Dr. Ley for his funeral.[1]

25        <u>The Sam Rainsy Litigation</u>. It is widely believed that Cambodian government officials

26   were involved in the assassination as part of an effort to quell dissent in the run-up to the

27   _____

28   [1] "Millions of Cambodians Join Kem Ley Funeral Procession," RADIO FREE ASIA (July 24, 2016), *available at* http://www.rfa.org/english/news/cambodia/cambodia-funeral-07242016145816.html

1    Communal Elections set for June 2017, and the General Elections scheduled to take place July

2    2018.  One leader who so alleges is Applicant Sam Rainsy, a founder and leader of the Cambodian

3    National Rescue Party ("CNRP"), which is currently the main political opposition party in

4    Cambodia.  Mr. Sam has been Cambodia's most vocal political opposition figure for decades, and

5    has faced dubious criminal and civil lawsuits and even a failed attempt on his life in 1997 as a

6    result of his political activities.[2]  On August 1, 2016, the Prime Minister of Cambodia initiated a

7    criminal complaint against Mr. Sam for defamation based on a Facebook post that he posted

8    accusing government officials of involvement in Dr. Ley's murder.  The requested discovery will

9    help Applicant Sam defend against those allegations and establish the government's involvement,

10   if any, in the underlying crime.

11         ICC Complaint.  Dr. Ley's assassination is also now part of a pending 220-page

12   Communication (complaint) submitted by attorney Richard Rogers on behalf of the Filing Victims

13   to the International Criminal Court ("ICC").  The ICC proceeding highlights political persecution

14   of dissidents in Cambodia, and a Supplement filed November 15, 2016 describes Dr. Ley's highly

15   suspicious death.  The requested discovery will aid the Filing Victims' pursuit of remedies within

16   the ICC proceedings.

17         Requested Information and Evidence.  Applicants Sam Rainsy and the Filing Victims each

18   seek information from Chevron relating to video and other recordings from the Phnom Penh Caltex

19   gas station in question from July 1-14, 2016.  Applicants likewise seek production of all documents

20   and communications between and among Chevron employees or executives, Caltex employees, and

21   government, judicial, prosecutorial or police officials related in any way to Dr. Ley's murder and

22   the ensuing criminal investigation and/or cover-up.

23         This Application clearly satisfies Section 1782's three statutory requirements.  First, it is in

24   "the district in which [the] person resides," 28 U.S.C. § 1782(a), because Chevron's headquarters

25   are in San Ramon, California.  Second, Applicants Sam Rainsy and the Filing Victims seek the

26   discovery "for use in a proceeding in a foreign ... tribunal," *i.e,* Cambodia's domestic courts and the

27   _____

28   [2] *See, e.g.,* "Profile: Sam Rainsy," BBC NEWS (Feb. 3, 2005), *available at*
     http://news.bbc.co.uk/2/hi/asia-pacific/138764.stm.

1    International Criminal Court.  Third, the applicants qualify as "interested persons" in those foreign

2    proceedings.

3          Chevron is well familiar with the legal standard at issue and should be well-equipped to

4    respond promptly given that it has brought over 23 actions pursuant to Section 1782 in the past few

5    years.  *See* Theodore J. Boutrous, Jr., *Ten Lessons from the Chevron Litigation: The Defense*

6    *Perspective*, 1 Stan. J. Complex Litig. 219, 234 n.56 (2013).  The company also frequently touts its

7    commitments to social responsibility and human rights. *See* https://www.chevron.com/corporate-

8    responsibility/people/human-rights.  Prompt release of the requested, limited discovery sought in

9    this Application would demonstrate that it takes its corporate responsibility seriously and that those

10   commitments are more than just empty public relations rhetoric.

11         For these and other reasons, Applicants respectfully seek prompt production of the

12   requested discovery.

13                              **FACTUAL BACKGROUND**

14         The evidence surrounding Dr. Ley's murder will be critical to fact and truth finding in at

15   least the two foreign proceedings described further below.

16   **A.      The Investigation and Prosecution of Dr. Ley's Killer**

17         On July 10, 2016, shortly before 9:00 am, Dr. Ley was shot to death at the Chevron station.

18   Approximately 30 minutes after the shooting, Cambodian police arrested a man who identified

19   himself as Chuop Samlap (which translates to "Meet Kill" in the Khmer language) for the crime.[3]

20   The suspect turned out to be Oueth Ang, a former soldier living in a remote province. Oueth said he

21   shot Kem Ley over a U.S. $3,000 debt.  As was immediately widely reported, the arrest and

22   _____

23   [3] This background narrative is drawn from various media accounts cited throughout the
     Application, local witness and rights workers' interviews, and NGO reports, including: Joint
24   Statement, "Cambodian Civil Society Condemns Outrageous Murder of Political Analyst Kem
     Ley," LICADHO (July 11, 2016), *available at* http://www.licadho-
25   cambodia.org/pressrelease.php?perm=406; "Kem Ley: Government critic shot dead in Cambodia,"
     AL JAZEERA (July 10, 2016), *available at* http://www.aljazeera.com/news/2016/07/kem-ley-
26   government-critic-shot-dead-cambodia-160710050756870.html; "Cambodians join funeral
     procession for murdered government critic," THE GUARDIAN (July 24, 2016), *available at*
27   https://www.theguardian.com/world/2016/jul/24/cambodians-funeral-procession-kem-ley-
     murdered-government-critic
28

1   identity of the purported culprit raise many questions.[4]  Oueth's relatives told several media

2   sources that he was too poor to lend anyone money – an assertion which has been borne out by

3   subsequent reports and by examination of his living situation.  Not one witness could be found who

4   had heard of Oueth ever having met Dr. Ley.  Further, Oueth used an expensive Glock pistol to

5   shoot Dr. Ley.  Guns in general are rarely possessed by civilians in Cambodia[5], and there has been

6   no effort to explain how the indisputably impoverished Oueth came into the illegal possession of

7   the expensive and rare weapon.  Also of note, one Caltex employee has said that just before the

8   shooting occurred, a police car had pulled into a parking spot next to Kem Ley's vehicle, but then

9   disappeared immediately after he had been shot.[6]

10       Since Dr. Ley's death, many human rights organizations, observers, and Cambodian

11   citizens have repeatedly questioned authorities' investigation and condemned its secrecy.  No

12   significant new information about the investigation has been released in months, despite multiple

13   public demands for transparency.[7]

14       **B.    The Politically Motivated Lawsuits Against Sam Rainsy**

15       Sam Rainsy has been living in exile since November 2015, and officially barred from

16   entering Cambodia since September 26, 2016.  (Declaration of Sam Rainsy ("Sam Decl."), at ¶¶ 9,

17   12.) He left Cambodia after authorities threatened to put him in jail for an unrelated defamation

18   conviction dating to a 2011 conviction that had supposedly been pardoned.  (*Id.* at ¶¶ 3-4.)  That

19   earlier threat to arrest Mr. Sam came amidst the start of a wave of politically motivated

20   prosecutions against opposition figures.  (*Id.* at ¶ 2.)  In the past year, at least 20 individuals aligned

21   _____

22   [4] *See, e.g.,* "Man charged over shooting of Cambodia critic," AFP (July 13, 2016), *available at* http://www.dailymail.co.uk/wires/afp/article-3687791/Man-charged-shooting-Cambodia-critic.html

23   [5] Cambodian Law on the Management of Weapons, Explosives and Ammunition, Art. 4 (2005) (banning civilian possession of firearms and ammunition).

24   [6] *See* RADIO FREE ASIA, "Witness Accounts of Arrest of Kem Ley's Accused Murderer Raise

25   Questions About Official Story," (July 29, 2016), *available at* http://www.rfa.org/english/news/cambodia/witness-accounts-of-arrest-of-kem-leys-accused-

26   murderer-raise-questions-about-official-story-07292016173437.html.

27   [7] *See* Ouch Sony, THE CAMBODIA DAILY, "Kem Ley's Brother Brands Official's Comments 'Insulting'," *available at* https://www.cambodiadaily.com/news/kem-leys-brother-brands-officials-

28   comments-insulting-117879/

1   with Mr. Sam's opposition party CNRP, including CNRP members of Cambodia's Parliament and

2   their supporters, have been arrested. (*Id.* at ¶ 12.) Three of them are serving 20-year sentences.

3   (*Id.*)

4          On August 19, 2016, Mr. Sam was summoned to Court over his Facebook comments about

5   Dr. Ley's death because the Prime Minister had filed yet another defamation case against Mr. Sam

6   for his public comments about Dr. Ley's murder. (*Id.* ¶¶ 7-8.) That prosecution is currently

7   pending. (*Id.* at ¶ 8; Sam Decl. Exs. A-B.)

8          **C.     Allegations of Political Persecution Pending Before the International
                    Criminal Court**

9          The ICC is a treaty-based permanent criminal court established to investigate and prosecute

10  individuals accused of genocide, crimes against humanity, war crimes and the crime of aggression.

11  Rome Statute of the International Criminal Court, Article 5, *available at* https://www.icc-

12  cpi.int/nr/rdonlyres/ea9aeff7-5752-4f84-be94-0a655eb30e16/0/rome_statute_english.pdf. Over

13  120 countries have ratified the Rome Statute, including Cambodia.[8] Those countries are referred to

14  as State Parties, and they have agreed to submit themselves to the jurisdiction of the ICC with

15  respect to the crimes enumerated in the Statute. *Id.* State Parties can request that the Office of the

16  Prosecutor of the ICC carry out an investigation, which is the precursor to prosecution. *Id.*

17  Individuals, intergovernmental or non-governmental organizations and other reliable sources may

18  also submit "communications" to the Office of the Prosecutor. *Id.* If the Prosecutor decides to

19  open an investigation based on such communications, the next step is to seek permission from the

20  Pre-Trial Chamber judges.

21         The ICC Communication at issue here was originally filed in 2014 on behalf of 10

22  Cambodian victims of government land confiscations. The case argues that land grabs in

23  Cambodia have been carried out by the country's "ruling elite" on such a massive scale that they

24  count as crimes against humanity. (Declaration of Richard Rogers ("Rogers Decl."), at Ex. A [7

25  October 2014 Executive Summary, paras 4, 6-8, 13-14, 27].)

26

27  _____

28  [8] Information about the ICC and its procedures is available at https://www.icc-cpi.int/about/how-
    the-court-works.

1    The Communication also alleges and discusses political persecution in Cambodia at length.

2    Dr. Kem Ley's murder falls into that category.  The Communication states:

3         Dissidents have been assassinated, murdered, beaten-up, subjected to
          trumped-up charges and illegal detention, and persecuted due to their
4         opposition to the Ruling Elite. Initially resorting to tactics such as
          grenade attacks and drive-by shootings, it is estimated that the Ruling
5         Elite has orchestrated over 300 politically motivated murders since
          the 1990s.

6
          These attacks were not limited to Cambodians who challenged the
7         land grabbing, but targeted more broadly those who were seen as a
          threat to the Ruling Elite's power. Victims included civil society
8         leaders, monks, journalists, lawyers, environmental activists, trade
          unionists, civilian protestors, and opposition politicians.

9
     (Rogers Decl. at Ex. A [7 October 2014 Communication Executive Summary].)

10
          On November 15, 2016, the Filing Victims submitted a Supplemental Communications to
11
     the ICC regarding the assassination.  (Rogers Decl., Ex. B.)   The Supplement describes that Dr.
12
     Ley's murder appears to be the latest in the long line of such killings that have gone unpunished,
13
     and is part of a much broader, ongoing campaign of political killings and other forms of
14
     persecution aimed at silencing those who challenge Cambodia's ruling elite.[9]
15
          On September 15, 2016, the Prosecutor of the ICC announced that it was shifting priorities
16
     to crimes that are committed by means of or result in "the destruction of the environment, the
17
     illegal exploitation of natural resources, or the illegal dispossession of land."[10]  Media quickly
18

19    _____

20    [9] See "Two Decades of Impunity in Hun Sen's Cambodia," HUMAN RIGHTS WATCH (November 13,
      2012), available at https://www.hrw.org/report/2012/11/13/tell-them-i-want-kill-them/two-
21    decades-impunity-hun-sens-cambodia (last accessed 10/20/2016) ("More than 300 people have
      been killed in politically motivated attacks since the Paris Agreement ... not one senior government
22    or military official has been held to account. ... It is no exaggeration to say that impunity has been a
      defining feature of the country since the signing of the Paris Agreements"); "Cambodia: Hun Sen
23    Promoting, Rewarding Killers," HUMAN RIGHTS WATCH (November 13, 2012), available at
      https://www.hrw.org/news/2012/11/13/cambodia-hun-sen-promoting-rewarding-killers (last
24    accessed 10/20/2016). ("More than 300 people have been killed in politically motivated attacks
      since then [the Paris Agreements], yet not one case has resulted in a credible investigation and
25    conviction.")

26    [10] John Vidal and Owen Bowcott, "ICC widens remit to include environmental destruction cases,"
27    THE GUARDIAN (Sept. 15, 2016), available at
      https://www.theguardian.com/global/2016/sep/15/hague-court-widens-remit-to-include-
28    environmental-destruction-cases

1  noted that the Communication by the Cambodian Filing Victims alleges exactly the type of crimes

2  that the ICC's new directive is targeting. *Id.*

3  **ARGUMENT**

4  **I.   THIS APPLICATION EASILY MEETS THE STATUTORY**
   **REQUIREMENTS FOR SEEKING DISCOVERY FROM CHEVRON**

5       Section 1782 is "the product of congressional efforts, over the span of nearly 150 years, to

6  provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v.*

7  *Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Over time, Congress has "substantially

8  broadened the scope of assistance federal courts could provide for foreign proceedings." *Id.* at 247-

9  49. Section 1782 provides in part:

10           The district court of the district in which a person resides or is found
            may order him to give his testimony or statement or to produce a
11           document or other thing for use in a proceeding in a foreign or
            international tribunal .... The order may be made ... upon the
12           application of any interested person and may direct that the testimony
            or statement may be given, or the document or other thing be
13           produced, before a person appointed by the court.

14  28 U.S.C. § 1782(a). The statute thus sets forth three requirements: (1) the "person" from whom

15  discovery is sought must reside or be found in the district of the court to which the application is

16  made, (2) the request must be made "by a foreign or international tribunal or upon the application

17  of any interested person," and (3) the document or thing sought must be "for use in a proceeding in

18  a foreign or international tribunal." This application satisfies all three elements easily.

19       **A.   Chevron resides in the Northern District of California**

20       Chevron Corporation is a Delaware company with its principal place of business in San

21  Ramon, California. Caltex in Cambodia is a petroleum brand name and wholly owned subsidiary

22  of Chevron Corporation used in more than 60 countries in the Asia-Pacific region, the Middle East,

23  and Southern Africa. (*See* Declaration of Eva K. Schueller ("Schueller Decl."), ¶¶ 4-5, Exs. C-D.)

24  On its website, Chevron Corporation states:

25           In Cambodia, Chevron offers fuel and automotive products to
            consumers through our subsidiary Chevron (Cambodia) Limited.
26
            Chevron operates a network of Caltex® service stations. We also
27           have convenience stores, lube centers and coffee shops.

28

11

1  (Schueller Decl., Ex. D.)  Similarly, Caltex in Cambodia's website gives contact information for

2  Chevron (Cambodia) Limited, instructs users to direct all questions regarding data privacy to

3  Chevron Corporation in San Ramon, and links to Chevron.com.  (Schueller Decl., Ex. E.)  And

4  Chevron Corporation's 2015 Supplement to its Annual Report to the Securities and Exchange

5  Commission features a photo of a Caltex gas station in Asia, and notes that "[t]he company and its

6  affiliates serve customers at approximately 5,100 Caltex-branded retail outlets…"  (Schueller

7  Decl., Ex. F at 40.)  Chevron Corporation is thus "found" in the Northern District of California for

8  purposes of section 1782.  *In re Oxus Gold PLC*, 2006 WL 2927615, at *5 (D.N.J. Oct. 11, 2006)

9  (holding that a business is "found" in a district if it would be subject to personal jurisdiction in that

10 district by virtue of its systematic and continuous activities there, even if the corporation's place of

11 incorporation or headquarters is outside the district).

12        Applicants understand that the videos, documents and things requested by this Application

13 are stored digitally and thus housed on Chevron's servers in the U.S., as is reflected by the website

14 ownership information on the Caltex entity at issue's own website.  (Schueller Decl., Ex. E.)

15 However, section 1782 requires only that the person be found here, not that the documents be

16 found here.  Chevron itself has successfully sought documents stored abroad from affiliated entities

17 found in the U.S., on the theory that the entity in the U.S. had "possession, custody, or control" of

18 the records.  *See In re Chevron Corp.*, 2012 WL 3636925 (S.D. Fla. June 12, 2012) (Chevron

19 obtained bank account records maintained in Ecuador with a 1782 request against the local branch

20 of the Ecuadorian bank); *see also In re Gemeinschaftspraxis Dr. Med Schottdorf*, 2006 WL

21 3844464 (S.D.N.Y. Dec. 29, 2006) (allowing German partnership's 1782 application for discovery

22 from consulting firm McKinsey Company in New York, for reports and documents located in

23 Germany, noting that the statute requires only that the "person" be found in the jurisdiction of the

24 court, not the documents).

25        **B.     Applicants Are All "Interested Persons" under § 1782**

26        Sam Rainsy and the Filing Victims are "interested persons" under section 1782.  *Intel*

27 *Corp.*, 542 U.S. at 256 (2004) ("No doubt litigants are included among, and may be the most

28 common example of, the 'interested person [s]' who may invoke § 1782…").  Sam Rainsy is a

1   defendant in a criminal proceeding to which original footage of the circumstances surrounding Dr.

2   Ley's murder is indisputably relevant – the footage and documents requested are likely to show

3   whether government officials were on the scene prior to the violence or otherwise involved.

4   Cambodia's Constitution establishes a right to freedom of expression and expressly enshrines the

5   Universal Declaration of Human Rights which does the same.  Constitution of Cambodia, Articles

6   31, 41, *available at* http://www.crrt-cambodia.org/wp-content/uploads/2011/01/Constitution-of-

7   the-kingdom-of-Cambodia-EN.pdf.  Cambodia has also ratified the International Covenant on Civil

8   and Political Rights (ICCPR), which is a multilateral treaty that imposes legal obligations on

9   ratifying countries.  The United Nations Human Rights Committee is charged with issuing

10  interpretations of the treaty, and has held that under the ICCPR, truth must be a defense to

11  defamation.  U.N. Human Rights Committee, General Comment 34 at ¶ 47, CCPR/C/GC/34 (Sept.

12  12, 2011), *available at* http://www2.ohchr.org/english/bodies/hrc/docs/gc34.pdf.  And although

13  defamation remains a criminal offense in Cambodia, punishable by steep fines, Cambodian law

14  also recognizes that truth is a defense and that a statement directed at a public official enjoys

15  greater protections than those directed at private individuals.  Cambodian Penal Code, Art. 305; "In

16  re: CPP v Ranariddh," THE PHNOM PENH POST (Dec. 3, 2003), *available at*

17  http://www.phnompenhpost.com/national/re-cpp-v-ranariddh ("Should the court find that the CPP

18  has established these three necessary elements of defamation, Prince Ranariddh is not left without

19  defenses. Truth is a complete defense to a charge of defamation.").

20          The Filing Victims satisfy the "interested person" test as well, because proof of government

21  involvement in the assassination supports their claims before the ICC.  *See Intel Corp. v. Advanced*

22  *Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) ("A complainant who triggers a European

23  Commission investigation has a significant role in the process.).  Chevron may argue that the ICC

24  has not yet begun the investigative phase in response to the Filing Victims' Communication, but

25  "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative

26  proceedings." *Intel Corp.*, 542 U.S. at 258.  Here, the status of the ICC proceeding is

27  indistinguishable from the status of the proceeding at issue in *Intel*.  The Office of the Prosecutor's

28

1   September 15 policy announcement, as well as other indications from the ICC, have shown that the

2   court is reviewing the Filing Victim's communications and is more likely than not to proceed.

3     **C.** **The Digital Recordings Are Sought for Use in Cambodian Domestic**
    **Courts and before the International Criminal Court**

4      As Chevron itself has repeatedly argued in its own 1782 applications, the burden on the

5   applicant to show that the evidence sought is for use in a foreign proceeding is "de minimis." *In re*

6   *Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010) (granting Chevron's 1782 application to obtain discovery

7   from the plaintiffs' Ecuadorian attorney Alberto Wray based on the court's "independent review of

8   the Applicants' prima facie showing and its conclusion that the discovery sought in fact relates to

9   claims and defenses they intend to assert in good faith."); *In re Republic of Ecuador*, No. 1:10-MC-

10  00040 GSA, 2010 WL 4027740 (E.D. Cal. Oct. 14, 2010) (granting a 1782 application brought by

11  the Republic of Ecuador where it made a "prima facie showing that the information it seeks . . .

12  has, generally speaking, some relevance" to an international arbitration deciding alleged violations

13  of Chevron's due process rights in a proceeding in Ecuador). And courts increasingly grant 1782

14  applications in all types of informal and non-traditional proceedings including "investigating

15  magistrates, administrative and arbitral tribunals, and quasi-judicial agencies." *Intel*, 542 U.S. at

16  258. Indeed, according to the Supreme Court, the foreign proceeding at issue must just be "within

17  reasonable contemplation," not "pending" or "imminent." *Intel*, 542 U.S. at 247. Chevron itself

18  has successfully obtained discovery in aid of arbitration before there was a determination by the

19  arbitral tribunal regarding its jurisdiction to hear the dispute. *In re Veiga*, 746 F.Supp.2d 8, 23

20  (D.D.C. 2010) ("The notion that it would somehow be premature for this Court to allow the

21  requested discovery until the BIT Arbitration Panel has determined it has jurisdiction to hear the

22  matter runs contrary to clear and unequivocal case law…").

23     Here, there are two already pending proceedings: the defamation case against Mr. Sam

24  Rainsy and the Communication before the ICC. Both satisfy the third element of section 1782.

25  **II.** **THE SUPREME COURT'S *INTEL* FACTORS STRONGLY FAVOR**

26    **GRANTING THIS APPLICATION**

27     In addition to the three statutory factors, the Supreme Court has set forth five additional

28  factors – known as the *Intel* factors – to guide courts' determinations of 1782 applications. *Intel*,

542 U.S. at 264-66.  Those factors are as follows:  1) the party from whom discovery is sought is not a party to any of the foreign proceedings, 2) the information sought is relevant to each of the proceedings, 3) there are no applicable foreign discovery restrictions, 4) the applicants' discovery requests are narrowly tailored, and 5) granting this discovery would promote efficient discovery. These factors all weigh in favor of granting this Application.

### A. Chevron Is Not a Party to the Foreign Proceedings

Chevron is indisputably not a party to any of the foreign proceedings described above.

### B. Applicants Seek Highly Relevant Information That Will Assist the Foreign Courts

The foreign courts and tribunal at issue in this application are assessing the truth of the accusations against the man who shot Dr. Ley.  There is information that he may have been dropped off at the Caltex station by the police, and police were later caught on video recordings amicably chatting with him before he was arrested.  The positioning of the cameras at the Caltex station indicates that his arrival is likely to have been caught on video recordings.  (Schueller Decl., Ex. G [photos].)  As such, the recordings are highly relevant to assessing the circumstances surrounding the murder, and thus supporting both Mr. Sam's defense and the ICC Filing Victims' claims.

### C. No Foreign Discovery Restrictions Bar the Applicants' Requested Discovery

A criminal defendant in Cambodia is entitled to seek discovery in aid of his defense. *See* Cambodian Code of Criminal Procedure, Art. 133.[11] Cambodia's Code of Civil Procedure also allows for discovery, including motions to compel production from third parties, akin to the discovery devices used in the United States.  *See* Cambodian Code of Civil Procedure §§ 148-160. For example, section 150 establishes a "duty to disclose" documents, and section 152 provides: "Where the court determines that sufficient grounds for an order to produce documents exist, the court shall issue a ruling ordering the holder of the documents to produce such documents."

---

[11] *Available at* https://www.unodc.org/res/cld/document/khm/2007/code_of_criminal_procedure_of_the_kingdom_of_cambodia_html/Cambodia_Code_of_Criminal_Procedure_Khmer-English_Translation.pdf

1    Regardless, section 1782 can be used to seek discovery that is broader than that available in
2    the foreign forum.  Indeed, in *Intel*, the Supreme Court stressed that district courts may compel
3    discovery of materials that cannot be discovered in foreign jurisdictions.  *Intel*, 542 U.S. at 259-63.
4    And there is no requirement to first seek discovery from the foreign court or to otherwise exhaust
5    other options before applying to a district court.  *In re Imanagement Servs.,Ltd.,* 2005 WL
6    1959702, at *3 (E.D.N.Y. Aug. 16, 2005).

7    **D.    The Requested Discovery Is Narrowly Tailored to Avoid Undue Burden**

8    Chevron has already provided the video recording to Cambodian government officials.
9    There is no reason it cannot do the same for Applicants. As explained above, previous attempts to
10   informally request the recordings at issue have not been successful.[12] The Applicants also seek the
11   recording directly from Chevron in order to verify the integrity of the recording, should the
12   government release a version itself in the future as has been promised.  Further, Applicants'
13   document and communications requests are targeted solely to documents relevant to Dr. Kem
14   Ley's murder.

15   **E.    Granting Applicants' Section 1782 Request Would Promote Efficient Discovery**

16   The discovery Applicants seek is probative of three separate foreign proceedings, each with
17   their own discovery mechanisms and timelines.  An order compelling prompt disclosure of the
18   discovery sought would facilitate equitable adjudication of the pending foreign proceedings.

19                                   **CONCLUSION**

20   For that reason and the reasons set forth above, the Applicants respectfully request that this
21   application for limited, targeted discovery be granted.

22   Dated:  December 13, 2016                    BRAUNHAGEY & BORDEN LLP
23
24                                                */s/* Eva Schueller
                                                 Eva Schueller, Esq. (SBN: 237886)
25
26                                               Attorneys for Applicants

27   [12] *See* Craig Skehan, SYDNEY MORNING HERALD, "Cambodia government critic Kem Ley was
     loved for telling the truth," (July 16, 2016), *available at*
28   http://www.smh.com.au/world/cambodia-government-critic-kem-ley-was-loved-for-telling-the-truth-20160715-gq6t9k.html.