1  J. Noah Hagey, Esq. (SBN: 262331)
      hagey@braunhagey.com
2  Eva Schueller, Esq. (SBN: 237886)
      schueller@braunhagey.com
3  BRAUNHAGEY & BORDEN LLP
   220 Sansome Street, Second Floor
4  San Francisco, CA 94104
   Telephone: (415) 599-0210
5  Facsimile: (415) 276-1808

6  COUNSEL FOR APPLICANTS SAM RAINSY
   and ICC FILING VICTIMS
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11
   *In re* Ex Parte Application of                Case No. 4:16-mc-80258-DMR
12
   SAM RAINSY and FILING VICTIMS before
13 the International Criminal Court,               **DECLARATION OF RAINSY SAM IN
                                                   SUPPORT OF APPLICANTS'
14         Applicants,                             SUPPLEMENTAL BRIEFING**

15 For an Order Pursuant to 28 U.S.C. § 1782
   Granting Leave to Obtain Discovery from
16
   CHEVRON CORPORATION,
17
   For use in Foreign Proceedings.
18

19

20

21

22

23

24

25

26

27

28

I, Rainsy Sam, declare as follows:

1.  I make this declaration based on personal knowledge. If called as a witness, I could, and would, testify competently to the facts stated herein.

2.  I am currently living in France because I cannot return to Cambodia at this time. I have been physically threatened by government officials if I do, as have my supporters.

3.  I have tried to obtain evidence in my defense in many proceedings against me for the past decade. Although Cambodian law allows for such discovery, the courts and authorities have often not accepted or processed my requests in the past. Political dissidents and opponents, and their supporters, consultants and professionals such as lawyers in Cambodia often face intimidation, harassment and even physical threats from government officials. For example, attached here as **Exhibit A** is a recent report of the Prime Minister overtly threatening political opponents such as myself with death. Some Cambodian courts also often do not keep clear records or follow their own procedural rules.

4.  On March 17, 2017, the Phnom Penh Municipal Court held a one-hour long trial during which I am informed that the government presented three police witnesses, apparently solely to testify that my online post referring to government involvement in Dr. Kem Ley's murder was on my Facebook page. I have not disputed that fact. There were no witnesses at the trial to testify about Dr. Kem's shooting itself, or about whether there could be any truth underlying my statement about government involvement in planning or covering up the murder.

5.  I was not at my trial and there is no transcript. I directed my attorney to explain to the Court, in my defense, that I have good reason to believe there was in fact government involvement in the shooting. I understand that my attorney so argued on my behalf. I also believe that Chevron should have evidence of such government involvement in its possession, through reports from its employee witnesses to the incident and to the video footage, through communications with government affiliates either before or after the killing, and in its own internal reports or communications.

6.  If the statement at issue in my defamation case is true or there is evidence showing that I had a reasonable basis to believe that it was, then I cannot be guilty of defamation in Cambodia,

as explained further below.

7. On March 30, 2017, the Phnom Penh Court issued a verdict convicting me of defamation under Article 305 of the Cambodian Criminal Code, which I cited in my original Application to this Court. In its verdict, the Cambodian court stated: "Sam Rainsy had no evidence proving that the government was behind the killing of Kem Ley." Attached here as **Exhibit B** is a translation of the verdict against me. (The verdict itself does, however, contain multiple typographical errors, for example transposing my name for the accused killer's name in some sections. I have asked to correct these errors through my attorney.)

8. Truth or a reasonable basis to believe a statement is true must be a defense to defamation charges in Cambodia, because Cambodia is a state party to the binding International Covenant for Civil and Political Rights ("ICCPR"). The ICCPR protects freedom of expression as a fundamental right that requires that *all* state parties to the treaty must provide for truth defenses to *all* defamation charges. *See* UN Human Rights Committee General Comment No.34 (2011), at ¶ 47, attached here as **Exhibit C**.

9. Articles 31, 35 and 41 of the Cambodian Constitution also uphold the right to freedom of expression that incorporates the international definitions involved in the ICCPR.

10. I have been asking for this Court to assist in procuring relevant evidence from Chevron that could reveal that government officials were involved in planning or executing the murder of Dr. Kem Ley, or in covering up evidence that could inculpate them after the fact. All of the categories of materials listed in my application relate to potentially relevant evidence, such as reports or internal communications that there were government officials or local authorities who were present at the Caltex gas station before Dr. Kem Ley was killed, or who questioned employees before or after the shooting, as well as communications between Chevron Cambodia and government officials.

11. Similarly, texts or emails between Chevron Cambodia employees stating that they were questioned before the shooting about the gas station's surveillance equipment or about Dr. Kem Ley's routines, and such communications since the shooting about government harassment or surveillance of employee witnesses, would also be relevant circumstantial evidence of government

involvement. Reports or communications in Chevron's possession could potentially also provide evidence that the shooter was dropped off the day of the murder by individuals affiliated with local or military authorities, as has been reported to me.

12.     These and other materials in Chevron's possession may also speak to, for example: whether or why the quality and nature of the video tape shown at trial was so poor and incomplete compared to what Chevron provided the police; contradictions in the government's narrative as compared to internal Chevron reports or communications; how Chevron has cooperated with the Cambodian authorities and any internal issues or questions that have been raised; admissions the government or its agents may have made to Chevron about either the assassination or my defamation case; and communications Chevron has with anyone else about the murder or my case that may identify other sources of information or reveal other relevant points about the government's case against me.

13.     My attorney for this defamation proceeding in Cambodia will submit such evidence to the appeal court with a brief and at the appeal hearing, and I will request to present new witnesses if any, or their testimony.

14.     I must make the record that I was improperly and wrongfully convicted and I intend to do so. My attorney will be able to provide the appeal court with new relevant evidence during my appeal of the verdict against me under Cambodian law and will do so.

15.     The period for appealing the verdict started from the time the notice of the judgment was delivered, which was April 7, 2017. My attorney Mr. Sam Sokong signed the bench warrant to acknowledge receipt of the notice of the judgment on my behalf on that day.

16.     The Appeal Court clerk has already prepared the dossier but the president of the Criminal Chamber has not scheduled the hearing yet.

17.     I will be able to present additional materials and briefing to the appeal court once the schedule has been set by the president.

//

//

//

SAM DECL. ISO APPLICANTS' SUPP. BRIEF

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct.

3

4

5  Dated:  June 29, 2017

6                                   Rainsy Sam

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28