September 1, 2017

**VIA ECF**
The Honorable Donna M. Ryu
United States District Court
Northern District of California
Oakland Courthouse
Courtroom 4 - 3rd Floor
1301 Clay Street, Oakland, CA 94612

   Re: *Sam Rainsy, et al. v. Chevron Corporation*, Case No. 4:16–mc–80258–DMR

Dear Judge Ryu:

The parties write to inform the Court that they have met and conferred and could not reach agreement on the content of the Production and Protective Order, as set forth below.

## I. Chevron's Position

From the beginning, Chevron has worked to reach agreement on a reasonable production process without Court intervention, which the parties achieved respecting the scope of Chevron's search for documents by their August 4th stipulation. The stipulation called for the submission of a Production and Protective Order (PPO) within three weeks. But by the end of that time, Chevron learned that Petitioner Rainsy's appeal had run its course and that Petitioners intended to use the discovery for purposes other than in the two foreign proceedings for which they ostensibly sought it. Chevron is a third-party to those proceedings, and seeks protection from the misuse of its internal documents for non-litigation objectives that exceed the scope of 28 U.S.C. § 1782. Per Your Honor's Local Rule 14, Chevron's proposed PPO and redline to the model order are attached hereto and to the Thomson Declaration as Exhibits A and B, all of which were provided to opposing counsel prior to Chevron's receipt of the Petitioners' position statement below.

Chevron stands ready to produce documents for use that is consistent with Petitioners' stated purpose in seeking them. Petitioners told the Court that they required Chevron's discovery "for use in Cambodian Domestic Courts and before the International Criminal Court." *Ex Parte* Application, Dkt. 1 at 14. Chevron's proposed PPO without question allows the documents sought here "for use in" those two proceedings, including for appropriate investigation, but not for some other undisclosed purpose. *See Glock v. Glock, Inc.*, 797 F.3d 1002, 1006–10 (11th Cir. 2015) ("a party, for good cause, may also ask the § 1782 court to enter a protective order prohibiting use [in unrelated litigation] . . . ."). Consistent with § 1782's statutory objectives, Chevron's agreement to the stipulated production was contingent on a use restriction. Chevron provided its draft PPO to Petitioners prior to August 4, stating that the "sole purpose" of the discovery was for use in the two foreign proceedings. Thomson Decl., Exh. A, ¶¶ 1, 7.1. Petitioners did not protest and knew Chevron insisted on this limitation when they agreed to the August 4th stipulation. Rather than accept this simple limitation and move on to a document production, Petitioners have made this a deal-breaker and for the first time this week also sought to add provisions allowing foreign courts to override this Court's order and set the PPO aside entirely, to which Chevron objects. *E.g.*, Petitioners' Draft PPO, ¶ 6.3.

As a third-party to two foreign proceedings freighted with charged overtones (Dkt. 33 at 4; Dkt. 21 at 22), Chevron's requested restriction is reasonable to protect it and its subsidiaries' employees from misuse of the discovery process. Petitioners' insistence on non-litigation use of the documents itself raises a red flag, as do the Petition's numerous false accusations—which Chevron has pointed out and Petitioners have neither defended nor withdrawn.[1] For whatever reason, the discovery sought here increasingly appears to be intended for some non-litigation purpose at odds with § 1782. For example, Mr. Rainsy claims to seek to support a defamation defense of truth, but he has not asserted this defense in the Cambodian proceedings in two levels of courts. This is confirmed by the Cambodian trial court judgment—which Petitioners submitted to this Court only *after* (and as a result of) the last hearing. Dkt. 32 at ¶ 7, Sam Supp. Decl., Ex. B.

Chevron's concern for the misuse of its subsidiaries' internal documents and abuse of the discovery process has been further confirmed by the revelation that Mr. Rainsy continues to demand documents even though his appeal is now over and he has publicly stated that he has no intention of litigating further in Cambodia. Once again, Chevron learned of these facts only from the press, not Petitioners. On August 11, the Cambodian appellate court affirmed the trial court's judgment, which Mr. Rainsy asserted was "a foregone conclusion." Odom, *Appeal Court Upholds 20-Month Sentence for Sam Rainsy*, The Cambodian Daily (Aug. 11, 2017), https://www.cambodiadaily.com/news/appeal-court-upholds-20-month-sentence-sam-rainsy-133552. Mr. Rainsy next publicly said he would not appeal: "I am not going to file a complaint to the Supreme Court." May Titthara, *Court Upholds Rainsy Prison Term*, The Khmer Times (Aug. 14, 2017), http://www.khmertimeskh.com/5077932/court-upholds-rainsy-prison-term.

The end of Mr. Rainsy's Cambodian proceeding renders this § 1782 proceeding moot, depriving the Court of jurisdiction. *See In re Mireskandari*, 599 F. App'x 676, 677 (9th Cir. 2015) (dismissing 1782 petition as moot when the underlying foreign legal proceedings were discontinued and there was no indication that they would be reinstituted); *Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co. LLC*, 341 F. App'x 821 (3d Cir. 2009) (holding 1782 petition moot where underlying arbitration was effectively complete and rejecting argument that such evidence might be used to reopen it). Mindful that "counsel . . . have a 'continuing duty to inform the Court of any development which . . . could have the effect of depriving the Court of jurisdiction . . ., that development should be called to the attention of the Court *without delay*," *Board of License Comm'rs v. Pastore*, 469 U.S. 238, 240 (1985) (original emphasis), Chevron immediately raised this with Petitioners. Petitioners' counsel first asserted that § 1782 should allow Mr. Rainsy to obtain "additional evidence" to "reopen" the Cambodian action. Apparently recognizing the weakness of this position, *see Comision Ejecutiva*, 341 F. App'x at 677,[2] Counsel then, on August 23, claimed for the first time that Mr. Rainsy now planned to appeal to the Cambodian Supreme Court "in the next few days." Yet, no appeal has been pursued, and Petitioner did not even confirm his appellate deadline or show that discovery here could be used.

---

[1] *See* Dkt. 24 at 8 (discussing Petitioners' false claim that Chevron "refused" to produce video footage); and at 2, 4, 14 (Petitioners failed to disclose ICC prohibition); *see also* Dkt. 14 at 9-11.

[2] Contrary to Petitioners' claim, *Intel Corp. v. Advanced Micro Devices, Inc.*, does not address concluded proceedings and does not mention *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995), on this point, though it approves *Euromepa* on a different issue. 542 U.S. at 262.

Upon this record, jurisdiction is likely absent, and at best uncertain.[3] The Court should issue an OSC why this § 1782 should not be dismissed as moot. But whether Mr. Rainsy further appeals or not, the episode confirms Petitioners' continuing lack of candor about the status of the foreign proceedings and willingness to manipulate the foreign litigation in order to seek discovery, rather than to seek discovery for use in foreign litigation. Section 1782's legitimate goals do not require third parties like Chevron subsidiaries' employees be put in the position of becoming Facebook fodder to further objectives unrelated to litigating the designated foreign proceedings. Accordingly, a simple order restricting the documents' use to furthering Mr. Rainsy's appeal, if any, is a reasonable and modest protection. The Court should adopt Chevron's PPO.

## II. Petitioners' Position

Chevron's argument appears largely intended to relitigate issues that were compromised by the parties in the August 4 Order and which otherwise should be irrelevant to the entry of a "Production and Protective Order in substantially the same form as the Model Protective Order (the "MPO") for cases in this District." (*Id*. at 7.) Chevron's position above also includes new arguments and evidentiary references, as well as a declaration from counsel, the contents of which never were disclosed or reviewed by Applicants. See Standing Order 12.[4]

The purpose of the August 4 Order was to eliminate further negotiation and doubt from this proceeding, which already has consumed hundreds of hours of counsel time. The parties' stipulation and the Court's order thus required that the parties agree on a protective order based on the District's MPO. Unfortunately, the parties were unable to agree. Chevron demands that the District's MPO be expanded to provide blanket restriction on *all* documents and information, *regardless of whether there was any legitimate confidentiality concern*.

Enclosed as **Exhibits 1(a) and (b)** are Applicant's proposed Protective Order redlined against, respectively: (a) the District's MPO and (b) Chevron's proposal. Chevron's draft provides that Applicants will be prevented under threat of sanction from disclosing or using non-confidential material outside the narrow band afforded to otherwise restricted material, such as trade secrets. *See* Exhibit 1(b), § 7.1 "Basic Principles" (restricting use of all disclosed material for use "only in prosecuting the ICC Litigation or defending the Rainsy Litigation *and for no other purpose*."); § 10 "Unauthorized Disclosure" (precluding disclosure of any document to any third party "not

---

[3] As the Court is aware, Chevron believes the potential ICC proceeding (which has never been instituted) is statutorily barred as a § 1782 basis. *See* Dkts. 14 & 24. Given Chevron's agreement to voluntarily produce documents for use in Petitioners' ICC efforts, the Court never reached the issue of whether it could order a § 1782 production in aid of an ICC proceeding. Thus, Chevron's PPO included the clarifying language found in footnote 1 of its draft PPO that its support of the potential ICC proceeding was voluntary. Petitioners rejected Chevron's language while publicly misstating the nature of the stipulation and order, claiming "this order stands as the first 1782 US document discovery effort in aid of an ICC proceeding." Sam Rainsy, Facebook (Aug. 5, 2017), https://apps.facebook.com/rainsy.sam.5/-photos/pb.520708567985881.-2207520000.-1502141577./1548250528565008/?type=3.

[4] Rule 12 precludes the use of additional declarations or exhibits and, in any event, Chevron did not disclose such declaration until a few hours before this letter was due. Applicants object to such inclusion and reserve the right to present a rebuttal declaration should the Court consider it.

authorized under this Stipulated Protective Order.").

Chevron's requested restriction also contradicts the plain language of the August 4 Order – which provides that Chevron would only seek protection over "Confidential" information. August 4 Order at ¶ 7. The Federal Rules are in accord, which preclude a party from restricting discovery productions under Rule 26 unless a party carries its "heavy burden" of demonstrating good cause that other protections must apply. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004). The purpose for this high bar, as noted in the MPO § 5.1, is to ensure against unjustified designations that will "unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties."

Chevron attempts to bolster its position by citing supposed "security" concerns justifying deviation from the August 4 Order and expansion of the MPO. The argument is a red herring. Despite repeated requests, Chevron has refused to produce exemplars of any document that would give rise to any concern. Moreover, Applicants already agreed that Chevron can designate any legitimately "confidential" document for protection, including any highly sensitive material giving rise to a security concern. For example, this can be accomplished by redacting personal information (as in the declaration submitted with the August 4 Order), or by designated a document carrying a legitimate serious security risk as "confidential." *See* Exhibit 1, §§ 1, 3 (scope) and 5. Chevron has not explained why it legitimately seeks to keep the remainder of production under protection.

The effect of Chevron's request is not subtle. It would burden Applicants' investigation and prevent the sharing of non-confidential materials with third party stakeholders involved in that effort – and place a gag on Applicants' ability to discuss evidence at issue. In doing so, the restriction exposes Applicants to jeopardy and potential Court sanction in the handling and treatment of otherwise non-confidential material, *e.g.*, communications from Cambodian officials, reports of third party actions around the Caltex station, descriptions of what was on the videotape of the incident, and similar information. In any other case under the Federal Rules, Applicants would be permitted to disclose such information to human rights community partners and to speak freely regarding the contents of non-confidential documents in connection with rebutting government statements and in other matters. In fact, in other contexts, Chevron's counsel has lauded the virtues of § 1782's flexibility, *e.g.*, for use in investigating issues related to "non-traditional, non-adjudicative proceedings." *See* Scott Edelman, *et al.*, Gibson Dunn, Obtaining U.S. Discovery to Litigate in Foreign or International Tribunals Pursuant to 28 U.S.C. § 1782 (Jan. 28, 2015).

In addition to requesting that the Court revise the August 4 Order, Chevron also now argues that the order is somehow "moot" based on Cambodia's denial of Applicant Sam Rainsy's intermediate appeal – a decision entered on August 11, just days after this Court's August 4 Order. Chevron's position is based on an infirm Second Circuit case, *Euromepa*, *supra*, overturned ten years ago by the Supreme Court in *Intel*. *Euromepa* held, erroneously, that a potential appeal or unfiled legal claim may not satisfy the strictures of § 1782. *Intel* overturned this reasoning, holding that a foreign proceeding need not be pending or even active, but merely "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258–59 (2004). *See also In re Marano*, No. CV-09-80020-MISC-DLJ, 2009 WL 482649 (N.D. Cal. Feb. 25, 2009) (providing discovery even though case had yet to be filed, holding under *Intel* that adjudication need not be pending but merely within "reasonable contemplation"). *See also Jiangsu Steamship*

*Co. v. Success Superior Ltd.*, No. 14 CIV. 9997 CM, 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015) (noting that *Intel* "overturned *Euromepa* insofar as it held that § 1782 discovery was not available because a motion to reopen the French judgment was neither "pending" nor "imminent."). Chevron's citation to *In re Mireskandari*, 599 F. App'x 676 (9th Cir. 2015) is inapposite. There, petitioner voluntarily abandoned the foreign proceeding while his section 1782 petition was pending and there was no stipulation (as here) to produce documents.[5]

Mr. Sam also unequivocally continues to exercise his appellate rights. The trial verdict and appeal are subject to reconsideration and/or appeal to the country's Supreme Court, including under Cambodia Article 445 which provides for reopening a case or granting Supreme Court review "Where new facts, documents, or other new evidence lead to reasonable doubt as to the guilt of a convicted person." The information sought from Chevron in discovery is intended to aid this process.

Chevron also seeks to relitigate its prior attack on the Court's jurisdiction in favor of ICC proceedings. In doing so, it uses much of its argument to cast aspersions on the veracity of Applicants' underlying Petition. Applicants will not respond to these attacks and mischaracterization of the record. Suffice to say, Chevron's allegations are misguided and attacks on Mr. Sam unprofessional. Moreover, all of counsel's references appear intended to draw the Court back into adjudicating issues that were squarely resolved in the parties' stipulation and ensuing August 4 Order. Further, Chevron expressly waived the objection when entering the August 4 Order and, in any event, its own draft protective order admits that discovery shall be used in aid of the ICC communication. *See* Exhibit 2 at § 1 ("Chevron is voluntarily producing documents subject to the protections of this Stipulated Protective Order absent the necessity of this Court reaching the issue of whether an ICC proceeding can serve as a basis for a Section 1782 proceeding.") and 7.1 (discovery materials may be used "in prosecuting the ICC Litigation"). Having caused Applicants to compromise the scope of discovery under the subpoena, Chevron is estopped from objecting to its own stipulations and admissions.[6]

In sum, the August 4 Order should be enforced on its terms and, barring prompt resolution, the Court should compel Chevron's document production pending further briefing or argument, such that documents be held by counsel in quarantine pending a final determination. To the extent the Court permits briefing on Chevron's challenge to the August 4 Order, Applicants reserve their right to seek fees and costs for having to litigate the enforcement of a stipulation that Chevron now seeks to avoid in bad faith.

---

[5] The other case cited by Chevron, *Comision Ejecutiva*, also did not involve a stipulation and order to produce documents. The underlying case was an arbitration; Petitioner failed to raise its intent to reopen the matter or introduce evidence when requesting discovery at the District Court. The appellate court also expressly referred the issue of re-opening discovery for factual determination on a new application. *Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co. LLC*, 341 F. App'x 821, 828 (3d Cir. 2009).

[6] Applicants also respectfully refer the Court to their arguments in support of this Court's existing jurisdiction to render assistance under Section 1782 in connection with ICC proceedings directed against foreign nationals as to crimes against humanity. *See, e.g.*, Dkt. Nos. 31-34 (Applicants' supplemental briefing re. ICC jurisdiction).

Respectfully submitted,

Dated: September 1, 2017         GIBSON, DUNN & CRUTCHER LLP

By:     */s/ William E. Thomson*
William E. Thomson
*Attorneys for Chevron Corporation*

Pursuant to Local Civil Rule 5-1(i)(3), the above-listed filing attorney certifies that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized its filing.

Dated: September 1, 2017         BRAUNHAGEY & BORDEN LLP

By:     */s/ Jonas Noah Hagey*
Jonas Noah Hagey
*Attorneys for Applicants*