# EXHIBIT A

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Andrea E. Neuman
Direct: +1 212.351.3883
Fax: +1 212.351.5303
ANeuman@gibsondunn.com

Client: 19624-00022

# GIBSON DUNN

September 26, 2017

**VIA ECF AND CHAMBERS COPY**

Honorable Donna M. Ryu
United States District Court
Northern District of California
Oakland Division
Oakland Courthouse, Courtroom 4
1301 Clay Street
Oakland, CA 94612

Re:   Response to Petitioners' Supplemental Information Regarding the Status of Cambodian Proceedings, *In re: Sam Rainsy,* Case No. 4:16-mc-80258-DMR

Dear Judge Ryu:

On September 21, 2017, Petitioners submitted a letter (Dkt. 51) and declaration of Sam Rainsy, with exhibits (Dkt. 52), with the stated purpose of providing supplemental information regarding the status of the Cambodian proceedings. On behalf of Chevron Corporation ("Chevron Corp.") and with leave of the Court, Chevron Corp. respectfully submits this response.

**The Sam Declaration Was Filed Without Leave, Consists Largely of Improper Argument, and Should Be Stricken**

If Mr. Sam's declaration were in fact an update on the status of the Cambodian proceedings, Chevron Corp. would not object. But Mr. Sam's declaration is a lengthy and improper additional brief that violates this Court's rules for discovery disputes. (Standing Order for Magistrate Judge Donna M. Ryu at ¶ 12.) It was filed without leave of Court, and, contrary to the federal rules, it is filled with argument and lacks proper evidentiary foundation. It should be stricken on these bases alone.

To the limited extent the submission addresses the Cambodian proceedings, Mr. Sam provides a copy of an incomplete request for permission to appeal, produced without its referenced attachment. (Dkt. 52, Ex. 1). The request seems to be dated several weeks ago, but nowhere in the six-page declaration does Mr. Sam say whether the request has been granted or otherwise acted upon, or when he anticipates a ruling. It thus appears to confirm that there is no present "pending" foreign proceeding in Cambodia. (Dkt. 52 ¶ 11); *see In re*

*Mireskandari*, 599 F. App'x 676, 677 (9th Cir. 2015) (dismissing § 1782 proceeding as moot following discontinuance of the underlying foreign legal proceedings).

Beyond this, virtually all of Mr. Sam's declaration consists of improper argument—for which he, moreover, the ostensible declarant, has neither personal knowledge nor relevant legal training. *See Tri-Valley Cares v. Dep't of Energy*, 203 F. App'x 105, 108 (9th Cir. 2006) (affirming trial court's exclusion of "declarations [that] contained impermissible legal conclusions, opinions from lay witnesses, or political statements"); *California Sportfishing Prot. All. v. River City Waste Recyclers*, LLC, 205 F. Supp. 3d 1128, 1134 (E.D. Cal. 2016) ("Legal conclusions are inadmissible when presented as lay testimony"). And even where it attempts to assert "facts," as opposed to legal conclusions, the declaration is inadmissible because it is speculative, lacks foundation, and offers hearsay. For example, Mr. Sam speculates (inaccurately) about Chevron Corp. documents and knowledge, but he lacks the foundation to attest to such facts and, in many instances, is just wrong. (*Id*. ¶¶ 5, 15; Fed. R. Evid. 602, 802.) Mr. Sam misrepresents the documents and information purportedly in Chevron Corp.'s possession when he suggests that Chevron Corp. has "firsthand knowledge of the events related to Dr. Kem Ley's death" (Dkt. 52 at ¶ 5), which he speculates could somehow be relevant to a defamation defense. As with his earlier declaration, which proved to be inaccurate, he asserts that "we understand the company has detailed reports and other information regarding the killing in question" (*id*. at ¶ 15), but the declaration provides no basis for such an "understanding," which is again inaccurate. In a similar vein, Mr. Sam characterizes the negotiations between the parties' lawyers, and in doing so misrepresents the content and timing of the information that was sent to his counsel (e.g., Dkt. 52, ¶¶ 20, 21).[1] Chevron Corp.'s counsel has never communicated with Mr. Sam, so his declaration is not only inaccurate, but not based on his personal knowledge. As a result, his declaration is facially deficient and inadmissible and should be stricken.[2] (Fed. R. Evid. 602, 802.)

---

[1] Among other inaccuracies, Mr. Sam asserts that Chevron Corp. never disclosed a declaration to Petitioners prior to its filing on September 1, 2017. (Dkt. 52 at ¶ 22. But this is incorrect, because Chevron Corp.'s counsel emailed the draft declaration to Petitioners' counsel on September 1, 2017 prior to its filing.

[2] Chevron Corp. objects to every paragraph in Mr. Sam's Declaration that is improper under the Federal Rules of Evidence: ¶¶ 3–5, 6, 9, 12, 13, 20–22 (lacks personal knowledge as to the parties' discussions and negotiations regarding the stipulation); ¶¶ 5, 15, 26 (lacks personal knowledge as to Chevron Corp.'s internal discussions, documents, and knowledge); ¶¶ 7, 9, 12, 14, 22, 27 (lacks foundation to offer opinions on Chevron Corp.'s obligations under U.S. law); ¶¶ 8, 11 (lacks foundation to offer opinions on whether the legal proceedings were done in accord with Cambodian law); ¶¶ 10, 15–19, 23–26 (lacks foundation to offer legal opinions on his case in Cambodia under Cambodian law); ¶¶ 11, 15–19, 23 (lacks foundation to offer legal opinions on pending ICC proceedings).

**To the Extent the Sam Declaration Is Not Stricken, Chevron Corp. Requests Leave to Submit a Response**

To address certain deficiencies in more detail, Mr. Sam first attempts to inaccurately recast the parties' stipulation and the Court's order as some type of extra-judicial agreement that can continue to exist even if this Court loses jurisdiction. (Dkt. 52, ¶¶ 5–9, 13–15, 26, 27.) But this is incorrect. *See Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co. LLC*, 341 F. App'x 821 (3d Cir. 2009) (holding 1782 petition moot where underlying arbitration was effectively complete and rejecting argument that such evidence might be used to reopen it); *In re Mireskandari*, 599 F. App'x at 677 (similar). Next, he proffers legal opinions concerning whether the materials requested from Chevron Corp. can be used in the Cambodian proceeding, assuming it were to continue. (Dkt. 52 at ¶¶ 3, 24). But nothing in his new declaration or any of his prior declarations supports the conclusion that he has the requisite training and knowledge to provide such legal opinions. Mr. Sam makes legal arguments under U.S. law (e.g. *id*. ¶ 9), but is not trained as a lawyer in the U.S. (or Cambodia, for that matter). In fact, in prior submissions to this Court, Petitioners supplied a declaration from Mr. Sam's Cambodian counsel, Sam Sokong, on matters of Cambodian law. (Dkt. 23). The fact that Mr. Sokong was unwilling or unable to attest to the matters to which Mr. Sam seeks to attest suggests that the legal conclusions asserted in the Sam Declaration are inaccurate.

Further, the Sam Declaration characterizes as a "threat" Chevron Corp.'s requests for information during the negotiations over the stipulation and protective order about the status of the Cambodian proceedings. (Dkt. 52 at ¶ 21). But requests for information are not threats, especially when media reports indicated that the Cambodia appellate court had upheld Mr. Sam's conviction—reports that quoted Mr. Sam himself stating in colorful language that he was *not* going to pursue a further appeal. This information had obvious relevance to whether the 1782 continued to be viable or not, which is likely why Petitioners did not inform Chevron Corp. or the Court of these developments. In addition, Mr. Sam's declaration further confirms that he has not, in fact, raised "truth" as a defense in the Cambodian proceedings, since the most he can assert is that "he certainly did intend to (and will) raise" truth as a defense. (Dkt. 52 at ¶ 25). Mr. Sam's legal opinion that Cambodia Article 445 "provides for reopening a case or granting Supreme Court review "[w]here new facts, documents, or other new evidence lead to reasonable doubt as to the guilt of a convicted person," (Dkt. 52 at ¶ 24), fails to address whether an appeal is appropriate in Cambodia based on a defense that could have been, but was not, raised in the trial court, and is not dispositive on the mootness issue.

Moreover, upon first learning that Petitioners intended to make a supplemental submission, Chevron Corp. asked that they provide the evidence they intended to submit,

namely the declaration from Cambodian counsel establishing that Mr. Sam's appeal was timely and that the court would accept any new evidence that may result from this 1782 proceeding. As Chevron Corp. noted in its communication to Petitioners' counsel, it appeared the time to submit new evidence had already run, as the rules of court appear to impose a 30-day deadline from the time the clerk's notice to submit newly discovered evidence. *See* Cambodian Criminal Code Articles 445 and 448. Petitioners have failed to respond to that concern and failed to provide the evidence Chevron Corp. requested from a competent declarant.

**Mr. Sam's Declaration Confirms That Chevron Corp.'s [Proposed] Protective Order Meets Petitioners' Needs**

Regarding Chevron Corp.'s [Proposed] Production and Protective Order, Chevron Corp. sent Petitioners' counsel a draft that was substantially similar to its current [Proposed] Production and Protective Order on August 2, 2017—prior to the parties entering into the stipulation on August 4th, 2017. Mr. Sam admits that Petitioners received Chevron Corp.'s draft before executing the stipulation, but offers the excuse that his "counsel had not analyzed Chevron Corp.'s position against the standard protective order." (Dkt. 52 at ¶ 20). But however Petitioners now try to spin it, their purported failure to review cannot be blamed on Chevron Corp. And it was Mr. Sam's counsel—not Chevron Corp.'s—who after receiving Chevron Corp.'s draft requested that any agreement on the form of the Production and Protective Order be delayed until three weeks after the August 4th stipulation was executed.

In any event, to the extent this Section 1782 proceeding is not deemed moot, the Sam Declaration demonstrates that there can be no real dispute about the form of the protective order this Court should enter. Chevron Corp.'s [Proposed] Production and Protective Order allows Petitioners to use any documents Chevron Corp. may produce for the precise purposes for which they informed this Court they required the discovery. Petitioners make straw man arguments that they "will necessarily need to share and evaluate this evidence with the numerous international stakeholders, investigators and consultants involved in both of the ICC and Cambodian legal matters" and that "[proposed] restrictions would effectively impose a 'gag' on our ability to effectively communicate with investigators and partners about the case." (Dkt. 52 at ¶ 16). That is not true. Nothing in Chevron Corp.'s [Proposed] Production and Protective Order prevents Petitioners from sharing information with nongovernmental organizations or other partners who agree to use such information solely in the proceedings for which this Court ordered its production. Chevron Corp.'s [Proposed] Production and Protective Order is not a "gag order," but an appropriately tailored order

limiting use of the documents to the proceedings for which this Court ordered their production.³

   Consequently, Chevron Corp. respectfully requests that the Court strike the Sam Declaration and consider this letter in evaluating the parties' competing [Proposed] Production and Protective Order. Chevron Corp. welcomes the opportunity to address the Court's questions at the hearing on September 28, 2017.

Dated: September 26, 2017    Gibson, Dunn & Crutcher LLP


             By:  */s/ Andrea Neuman*
                Andrea Neuman

             Attorneys for Chevron Corporation

AEN/ms
102370789.6

---

³ Petitioners themselves have argued that there are legitimate safety concerns at play here. (*See* Dkt. 1 at 5–6 (describing how Mr. Sam faced dubious criminal and civil charges); 5 (detailing how Dr. Ley's widow fled in fear for her life after being questioned); 8 (explaining that Mr. Sam is currently living in exile); 8–9 (describing 20 politically motivated arrests); 10 (describing how the ICC Communication relates to more than 300 politically motivated murders); Dkt. 1 at 7 fn. 3 (citing "Kem Ley: Government critic shot dead in Cambodia," AL JAZEERA (July 10, 2016), *available at* http://www.aljazeera.com/news/2016/07/kem-ley-government-critic-shot-dead-cambodia-160710050756870.html (detailing how Cambodians fear criticizing the government due to violence against those who have done so in the past)); Dkt. 1 at 8 fn. 4 (citing "Man charged over shooting of Cambodia critic," AFP (July 13, 2016), *available at* http://www.dailymail.co.uk/wires/afp/article-3687791/Man-charged-shooting-Cambodiacritic.html (describing the rule of law as "threadbare" and noting that "critics of the elite are easily silenced")).