UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM RAINSY, <br>   Plaintiff, <br>    v. <br> CHEVRON CORPORATION, <br>   Defendant. | Case No. 16-mc-80258-DMR <br><br> **SECOND ORDER ON PARTIES' DISPUTE RE PROTECTIVE ORDER** <br><br> Re: Dkt. Nos. 69, 70 |

   Applicants Sam Rainsy and Filing Victims Before the International Criminal Court (collectively, "Applicants") filed an ex parte application for an order pursuant to 28 U.S.C. § 1782 granting leave to obtain documents and information from Chevron Corporation ("Chevron") related to two foreign proceedings: (1) a pending Communication (complaint) by the Filing Victims to the International Criminal Court ("ICC"); and (2) a defamation action brought by a member of the Cambodian government against Sam Rainsy pending in a Cambodian court. [Docket No. 1.] Applicants generally sought documents and information related to the July 2016 murder of Cambodian political commentator Dr. Kem Ley at a Caltex service station in Phnom Penh, Cambodia. Caltex is a Cambodian affiliate of Chevron. *See id*. The undersigned granted the application on February 9, 2017. [Docket No. 10.] Following service of the subpoena on Chevron, Chevron moved to vacate the order granting the application and to quash the subpoena. [Docket No. 14.]

   On August 3, 2017, before the court ruled on Chevron's motion, the parties filed a joint stipulation and proposed order resolving their disputes regarding the subpoena, which the court entered as an order on August 4, 2017. [Docket No. 42 (Aug. 4, 2017 Order).] In relevant part, the parties agreed that Chevron would produce responsive documents subject to the court's entry of a proposed production and protective order. *Id*.

The parties were unable to agree upon the terms of the production and protective order. [*See* Docket No. 47.] At a hearing on September 28, 2017, the court ruled on several disputes related to the production and protective order. [Docket Nos. 58 (Sept. 28, 2017 Minute Order); 60 (Hr'g Tr.).] Following further briefing, on October 24, 2017, the court ordered the parties to include the following so-called "use restriction" in the production and protective order:

> Applicants are entitled to use Discovery Material or Protected Material in the Underlying Litigation, including to investigate claims and defenses in those proceedings, and may share non-confidential Discovery Material with representatives, consultants, partners and stakeholders (collectively "Stakeholders") involved in the Underlying Litigation. "Underlying Litigation" shall include not only the pending ICC and Cambodian Litigation, but also any appeals thereof or applications to reopen or reconsider, as well as any other legal proceedings, *i.e.*, new legal action(s) filed by or against one or more of the Applicants, arising out of or relating to the subject matter of the Underlying Litigation.
>
> Applicants may not disclose Discovery Material or Protected Material to a Stakeholder unless all personally identifying information designated as "Confidential" has been securely redacted from such document or summary thereof.
>
> Nothing herein shall preclude Applicants from publicly disclosing their legal filings, provided that Applicants shall not disclose any personally identifying information designated as "Confidential" by Chevron.

[Docket No. 68.] The court ordered the parties to meet and confer to complete the drafting process for the remainder of the production and protective order in a manner consistent with its rulings, and ordered the parties to submit a final document for the court's approval within seven days. *Id.*

The parties were again unable to reach agreement, and instead submitted individual discovery letter briefs. [Docket Nos. 69 (Applicants' Letter), 70 (Chevron's Letter).] Unfortunately, since the parties failed to submit a joint letter setting forth the disputes in accordance with the court's Standing Order, it is difficult to determine which issues remain in dispute and each side's position on those issues. Submitting competing redlined versions of the proposed production and protective order is no substitute for a joint letter. Nevertheless, the court has reviewed the parties' submissions and determines that this matter can be decided without further oral argument. *See* Civ. L.R. 7-1(b). The court makes the following rulings on what

appear to be the four main areas of dispute:

1. **Section 1, language related to use restriction:** The parties appear to have adopted certain language from this district's model protective order which is set forth immediately below in non-bolded text. Applicants propose adding the bolded language to "clarify" the provision:

> This Order does not confer blanket protections on all disclosures or responses to discovery and that [sic] the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to "confidential" treatment **or to the extent disclosures or responses to discovery are subject to the use restriction adopted by the Court (Dkt. 68) and herein** . . .

This paragraph renders the use restriction meaningless and should be excised in its entirety. The October 24, 2017 order limited the use of "Discovery Material" or "Protected Material" to use "in the Underlying Litigation." [*See* Docket No. 68 at 3-4.] In other words, Chevron's entire production is subject to a use restriction. Some of the confusion in the proposed paragraph flows from the parties' adoption of language from the model protective order, which is meant to address typical civil cases where the protective order does not confer blanket protection, but instead protects information that is designated as confidential under the order. By contrast, in this case, Chevron's entire production is subject to a blanket use restriction. For this reason, the whole paragraph cited above, including bold and non-bold text, should be stricken from the protective order.

2. **Section 1, subject matter of the "Underlying Litigation":** In its October 24, 2017 order, the court noted that the "subject matter of the underlying litigation . . . is the shooting death of Dr. Ley." [Docket No. 68 at 4.] Applicants propose to add the following bolded language in the definition of the subject matter of the ICC Litigation in Section 1:

> . . . any appeals thereof or applications to reopen or reconsider and/or new proceedings filed by or against one or more of the Applicants arising out of or relating to the subject matter of the ICC Litigation or Cambodian Litigation, *i.e.*, the murder of Dr. Kem Ley **and related events** . . .

Based on their comments to a redlined version of the production and protective order, it appears that the basis for this proposed addition is Applicants' contention that the "persecution of Sam Rainsy from his commentary and activism as arising from the assassination is clearly part of the

3

'subject matter' at issue going forward." [Docket No. 69-1 at ECF p. 3.] This is inconsistent with the position Applicants took at the September 28, 2017 hearing. At the hearing, the court questioned Applicants as follows: "from Mr. Sam's declaration, it sounds like he wants to be able to use [Chevron's] documents in the ICC proceedings underlying—or that you all have described— . . . in the past and in his own case, right? You are not intending to use them for any other purpose, right?" Applicants responded, "That's right. That's the gravamen of why we filed the petition." [Docket No. 60 (Sept. 28, 2017 Hr'g Tr.) 11.] Counsel further explained the reason Applicants were seeking information and documents from Chevron:

> . . . [my clients] are going to try to use [Chevron's production] in order to understand what happened with Dr. Kem Ley's murder. They want to be able to understand that. That's the fundamental piece of what's happening in the ICC and it's the fundamental piece of what's going to be happening back in Cambodia and re-opening and doing everything we can to clear Mr. Sam's name.

*Id*. at 16. In other words, Applicants represented to the court that with respect to the Chevron subpoena, the "subject matter" of the ICC Communication and Mr. Sam's Cambodian litigation is the murder of Dr. Kem Ley. Any attempt to now stretch the subject matter to include the "persecution of Sam Rainsy from his commentary and activism" or any other "related events" is unsupported. Accordingly, the court denies Applicants' request to expand the definition of the "subject matter of the ICC Litigation or Cambodian Litigation" in section 1.

**3.** **"Confidential" designation:** in section 2, Applicants propose to add the following bolded language to the definition of "Confidential" information or items, asserting that it is consistent with the court's October 24, 2017 order:

> information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c) **due to their containing unredacted personally identifiable information as set forth in the October 24 Order at 2:17-23 ("[Chevron] confirmed that information about Cambodian employees is the only sensitive information in its production") and 4:5-11 ("Chevron did not articulate other specific concerns about the use of its production in proceedings related to the subject matter of the underlying litigation . . . the court declines to exercise its discretion to adopt Chevron's more restrictive proposal.").**

Chevron asserts that it is improper to narrow the definition of confidential information to only

4

1  "personally identifiable information," arguing that "if it is later determined that other Confidential information exists, Chevron should be permitted to designated the material as such consistent with the Model Protective Order." [Docket No. 70 at 2.] This too, is inconsistent with the position Chevron took at the September 28, 2017 hearing, which was that the *only* sensitive information in its production is information about Cambodian employees. The court pressed Chevron's counsel to identify any sensitive information in its small production comprising fewer than 200 documents. Chevron only identified a concern regarding individual employee names. Hr'g Tr. 21-22, 30. The court relied on Chevron's representation in rendering its prior ruling. Given Chevron's representations about the content of its production, the court grants Applicants' request to narrow the definition of confidential information or items to only those materials containing "personally identifiable information."

**4.     Identification of the ICC Filing Victims:** the ICC Filing Victims have been proceeding pseudonymously in this matter. Chevron contends that Applicants must disclose the identities of the ICC Filing Victims so that Chevron may confirm their compliance with the proposed production and protective order. [Docket No. 70 at 2.] Chevron represents that it "has confirmed that it will maintain the identities on a confidential basis per the [proposed production and protective order]." *Id*. Applicants did not address or respond to this request in their unilateral letter. The names of the ICC Filing Victims are sensitive and subject to heightened protection given the nature of the ICC proceeding and potential for serious reprisal. Accordingly, the court grants Chevron's request, but orders the disclosure of the ICC Filing Victims' names on an attorneys' eyes only basis, with a limitation to three specifically identified Chevron attorneys, which may be either in-house or outside counsel, or a combination of both.

The parties shall immediately meet and confer to complete the drafting process of the remainder of the production and protective order, consistent with this order and the court's previous orders. They shall submit a final proposed production and protective order for the court's approval by November 28, 2017. The court will not entertain any requests for extension of that deadline. If any disputes remain, the parties must notify the court by contacting courtroom deputy Ivy Garcia at (510) 637-3639. The court will then set a date for the parties to meet and

confer in person in the courthouse. No unilateral submissions will be considered, and may result in issuance of sanctions.

**IT IS SO ORDERED.**

Dated: November 17, 2017



_____
Donna M. Ryu
United States Magistrate Judge